UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: ) | |
| ) | Case No. 12 B 13866 |
| SEOKJUN HONG, ) | |
| ) | |
| Debtor. ) | Chapter 7 |
| ) | |
| ) | |
| KYU CHOON ON, ) | |
| ) | Adv. No. 12 A 1220 |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Judge Pamela S. Hollis |
| SEOKJUN HONG, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

This matter comes before the court following trial on the complaint filed by Plaintiff Kyu Choon On against Defendant Seokjun Hong. On seeks a finding that the debt Hong owes to him is nondischargeable pursuant to 11 U.S.C. § 523(a)(6). The court heard the arguments of the parties, received exhibits into evidence and took testimony from three witnesses: On, Hong and their landlord, Grant Fujisawa. An oral ruling was made at the conclusion of trial, and this Memorandum Opinion memorializes that ruling. To the extent there is any inconsistency with the oral ruling, the findings of fact and conclusions of law stated in this Memorandum Opinion govern.

As stated in open court and for the reasons stated below, the court hereby finds that the portion of Hong's debt to On which is attributable to the conversion of dry cleaning equipment and customers is nondischargeable pursuant to 11 U.S.C. § 523(a)(6). The remaining portion of Hong's debt to On is discharged.

## FINDINGS OF FACT

In 1992, Kyu Choon On purchased a dry cleaning business at 1132 West Thorndale Avenue in Chicago. The $70,000 purchase price did not include the real estate, which he leased from Grant Fujisawa, but did include dry cleaning equipment, retail walk-in customers and "drop-off service" customers. The "drop-off service" customers were storefronts without dry cleaning equipment of their own. In 1999, On incorporated the business as Dove East Cleaners.

In 2001, On paid $35,000 for the purchase and installation of new dry cleaning equipment. He obtained an installation permit from the City of Chicago. **Plaintiff's Exhibit F**.

According to Fujisawa, On was not a good tenant and they had a poor business relationship. On was often late with the rent and caused extensive damage to the property. At one point, On took out part of the storefront without asking permission and never repaired it. He also cut a roof joist without permission, leading to a near-collapse of the roof. Despite these problems, Fujisawa never filed a forcible detainer action seeking to evict On. He did serve a demand for rent in the amount of $4,200 on both On and Dove East Cleaners on January 7, 2006. **Plaintiff's Exhibit H**.

By 2006, On was ready to get out of the dry cleaning business and tried to sell it, but with no success. He executed a sale agreement with another party for $100,000, but had difficulty transferring the business license because of zoning issues. On placed an advertisement in the newspaper, looking for a manager. Hong wanted to learn about the dry cleaning business, so in or about May 2007, he answered the ad. Hong spent the next two months training with On.

On and Hong then negotiated a "Trust Management Agreement," first committing the terms to paper in Korean. On hired a lawyer to prepare the document in English, and both men signed it on July 28, 2007. **Plaintiff's Exhibit A**. According to the Trust Management

Agreement, Hong would give On a $5,000 deposit, pay him $1,300 each month[1] and manage the dry cleaning business, keeping all profits after expenses.

Hong testified that he paid more than $5,000 for the deposit, although he did not name a different amount. Hong made some but not all of the $1,300 monthly payments.

According to Hong, about six months after signing the Trust Management Agreement, he learned that On did not own the real estate where Dove East Cleaners operated. Fujisawa asked Hong why he paid $1,300 each month to On if On was not the owner. Hong stated, "That would be too much between two Koreans." In other words, Hong wanted to continue to have a good relationship with On. When Hong told On about the conversation with Fujisawa, On told him not to enter into any leases with Fujisawa. Nevertheless, Hong reminded On twice more that he should sign a lease with Fujisawa.

Hong was responsible for paying the business expenses for Dove East Cleaners. After signing the Trust Management Agreement, the parties went to MB Financial and On added him to the business bank account. **Plaintiff's Exhibit D**.

The parties orally agreed that Hong would collect all accounts receivable owing from drop-off customers and pay On the amount attributable to work done prior to July 28, 2007.[2] The drop-off customers were billed approximately a week in arrears. Hong paid some of the accounts receivable owed to On, but not all of the amounts due. On reviewed his account records, **Plaintiff's Exhibit I**, and testified that Hong still owed him approximately $15,000 on account of these receivables.

---

[1] Throughout the trial, the witnesses referred to this obligation to pay $1,300 per month as running from Hong to On. The Trust Management Agreement actually states, however, that "The Grantor shall give the Grantee a total of ($1300.00) a month for the trust management of the said business. The amount shall be paid to the Grantee by the 5th day of each month." According to the introductory paragraph of the Trust Management Agreement, On is the Grantor and Hong is the Grantee. Therefore, the Trust Management Agreement actually provides that <u>**On is to give $1,300 per month to Hong**</u> rather than the other way around.

[2] This is not memorialized in the Trust Management Agreement.

[3]

The Trust Management Agreement expired after three years, on July 28, 2010. Hong and On discussed extending it, although no written agreement was executed, as would have been required for an extension. On asked Hong to take the business over, but things were slow and Hong was not sure what he wanted to do. Hong continued to operate Dove East Cleaners, however, despite the expiration of the Trust Management Agreement.

Hong testified that he believed Fujisawa owned the business after the agreement expired. Fujisawa told him so, and "I checked it and that was right." When asked how he checked the ownership, Hong testified, "I made some inquiries through my acquaintances or accountants." Hong initially refused to provide the names of these acquaintances, but finally answered the question after direct instruction from the court, providing the names Sohn Koh and Hwang Kim. Hong asked Koh and Kim about the effect of On not having a lease with Fujisawa, and they told him that Fujisawa owned the business. Neither Koh nor Kim appeared in court to corroborate Hong's testimony.

Even though Hong apparently believed that Fujisawa was the owner of Dove East Cleaners, he continued to give money to On. When On stopped by three or four times each month, Hong gave him all the cash he had on hand.

In early 2011, a concern arose that pushed the issue of ownership back to the front burner. Dove East Cleaners had the opportunity for remediation work to be performed. Although the testimony on this point was somewhat vague, it appears that after waiting in a lengthy queue, operators of dry cleaning businesses can pay a $15,000 deductible toward an environmental cleanup of their premises. Hong encouraged On to do the cleanup, and On told him to shut up and just manage the business.

At the Ons' request, Hong went to Mrs. On's business after work one day at the end of March. He wanted On to pay for the remediation, and to settle the future of the business. On told Hong that he would take Dove East Cleaners back if he had to pay for the cleanup himself. Hong eventually agreed to buy the business for $15,000, plus $15,000 for the unpaid accounts receivable from pre-July 28, 2007 drop-off customers, and $20,000 in "back rent," represented by the $1,300 monthly fee. On set a deadline for payment of April 30, 2011.

Hong testified that he asked the Ons what would happen to his deposit, and On told him that because the deposit money had been earned while working at Dove East Cleaners, it belonged to the business. All the payments Hong made to On were cash payments, so he had no proof the payments were ever made. On told Hong that everything Hong owned actually belonged to On.

Nevertheless, Hong went to his lawyers to draft a purchase agreement. Without a lease for the real property, however, the agreement could not be prepared. Hong did not have the money or a draft agreement by April 30, so he went to On's house and requested extra time. On told Hong he had to leave the business within a week.

Hong went to Fujisawa, ostensibly to say goodbye. When Fujisawa asked Hong why he was leaving, Hong told him it was because On was taking the business back. Hong testified that Fujisawa told him: "Don't worry about that, I'll get rid of On." Hong contacted his attorneys to begin negotiating a lease with Fujisawa.

On the morning of May 6, 2011, On went into Dove East Cleaners to operate the business. Fujisawa arrived in the afternoon, showed On a lease between Fujisawa and Hong dated the same day, **Plaintiff's Exhibit B**,[3] and told On to get out. On refused. Fujisawa brought in the Chicago Police Department. The police arrested On for trespassing, handcuffed

---
[3] Plaintiff's Exhibit B is only pages 1 and 8 of the lease.

[5]

him and brought him down to the station. **Plaintiff's Exhibit J**. Hong watched the arrest from a hiding spot outside the building.

Hong changed the locks on the doors and resumed dry cleaning operations. He opened a new bank account the next week.

On or about July 13, 2011, Hong filled out an application for business license for Smile Cleaners, Inc., at the same address as the former Dove East Cleaners. **Plaintiff's Exhibit C**. Hong indicated in the application that the business was incorporated on May 9 and began operating on May 24, 2011. Smile Cleaners is not listed on Hong's Schedule B in answer to Question 13, which requires debtors to list their "stock and interests in incorporated and unincorporated businesses."

At trial, Hong first testified that there were major changes between May 6, when On was ejected from Dove East Cleaners, and May 24, when Smile Cleaners began operating, especially the addition of different drop-off customers. When asked to clarify what changes occurred, Hong initially testified that people had heard about his new business, so traffic was increasing. When the court indicated that this response did not answer the question, Hong then testified that the business was too busy and he was actually trying to cut back on the number of drop-off customers. The court again requested that Hong clarify his answer. This time Hong named three new drop-off customers added after May 6. He also stated that there were a higher number of walk-in customers, although the individuals were always different.

At the time of On's arrest, Dove East Cleaners owned dry cleaning equipment and a known phone number. It had many retail walk-in customers and approximately 15 drop-off clients. Hong continued to use the same dry cleaning equipment that Dove East Cleaners had used.

Hong listed On as an unsecured creditor in Schedule F with a claim of $53,041 described as "breach of contract."

## CONCLUSIONS OF LAW

In order to sustain a claim under 11 U.S.C. § 523(a)(6), On must prove by a preponderance of the evidence that Hong: (1) caused an injury; (2) acted willfully; and (3) acted maliciously. See In re Cole, 378 B.R. 215, 226 (Bankr. N.D. Ill. 2007). "[O]nly acts done with the actual intent to cause injury" come within the scope of § 523(a)(6). Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998).

The Seventh Circuit recently recognized that the phrase "willful and malicious" has generated a "pseudo-conflict among circuits . . . different legal definitions of the same statutory language that probably don't generate different outcomes." Jendusa-Nicolai v. Larsen, 677 F. 3rd 320, 322-23 (7th Cir. 2012).

After reviewing the definitions proffered by various courts, the Jendusa-Nicolai panel concluded that:

> whatever the semantic confusion, we imagine that all courts would agree that a willful and malicious injury, precluding discharge in bankruptcy of the debt created by the injury, is **one that the injurer inflicted knowing he had no legal justification and either desiring to inflict the injury or knowing it was highly likely to result from his act**. To allow him to shirk liability by discharging his judgment debt in those circumstances would undermine the deterrent efficacy of tort law without serving any policy that might be thought to inform bankruptcy law.

Id. at 324 (emphasis added).

There is a split of authority regarding when a debt arising from an intentional breach of contract may be excepted from discharge. The Ninth Circuit requires the breach to be accompanied by tortious conduct, which should not be conflated with intent to injure. Lockerby v. Sierra, 535 F. 3rd 1038, 1042 (9th Cir. 2008); In re Jercich, 238 F. 3rd 1202, 1206 (9th Cir.),

[7]

cert. denied sub nom. Jercich v. Petralia, 533 U.S. 930 (2001). In the Fifth Circuit, however, any breach of contract is nondischargeable if there was intent to injure or injury was substantially certain to result. In re Williams, 337 F. 3rd 504 (5th Cir. 2003). In Wish Acquisition, LLC v. Salvino, 2008 WL 182241, *3-4 (N.D. Ill. Jan. 18, 2008), Judge James Zagel of the Northern District of Illinois noted the split between Circuits and concluded that the better line of cases requires tortious conduct.

This court concurs with Judge Zagel's conclusion that tortious conduct is required for a breach of contract to result in a nondischargeable debt, especially as the opposite line of cases may discourage efficient breaches of contract. See, e.g., XCO Intern., Inc. v. Pacific Scientific Co., 369 F. 3rd 998, 1001 (7th Cir. 2004) ("It is true that if there is a very stiff penalty for breach, parties will be discouraged from committing 'efficient' breaches, that is, breaches that confer a greater benefit on the contract breaker than on the victim of the breach, in which event breach plus compensation for the victim produces a net gain with no losers and should be encouraged.").

On alleges that the tortious conduct in this case is conversion.

> To prove conversion, a plaintiff must establish that (1) he has a right to the property; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property.

Loman v. Freeman, 229 Ill. 2nd 104, 127, 890 N.E.2nd 446, 461 (Ill. 2008) (citation omitted). Therefore, to obtain a finding that Hong's debt to him is nondischargeable, On must prove by a preponderance of the evidence the elements of conversion as well as the elements of § 523(a)(6).

As the court stated at the conclusion of the trial, there are three sets of facts that gave rise to debts owed by Hong to On. The first set of facts involves the $15,000 in accounts receivable owing from drop-off customers attributable to work done prior to July 28, 2007.

No evidence was presented, however, as to whether Hong collected all of the accounts receivable owed to On and kept them for himself, or whether Hong simply failed to collect the outstanding amounts. Neither On nor Hong testified as to the specifics of the collections, and none of the storefront customers who owed money appeared to testify that they paid these receivables to Hong.

Moreover, the alleged agreement to collect and turn over these accounts receivable was not memorialized in the Trust Management Agreement. There was only an oral agreement, supported by documentation in Plaintiff's Exhibit I which was partially written in Korean.

Therefore, On failed to prove by a preponderance of the evidence that Hong caused an injury with regard to the accounts receivable, let alone whether that injury was willful and malicious.

The second set of facts concerns the $1,300 monthly rent obligation memorialized in the Trust Management Agreement. Both On and Hong testified that some but not all of the rent payments were made. No evidence was presented, however, that the failure to make the rent payments was anything more than a straightforward breach of contract, rather than the conversion required for a finding of nondischargeability. Indeed, the evidence showed that rather than Hong "wrongfully and without authorization assum[ing] control, dominion, or ownership over" the rent money, the business simply did not generate enough cash to make all of the $1,300 rent payments.

Additionally, the Trust Management Agreement actually provides that "[t]he Grantor [On] shall give the Grantee [Hong] a total of $1,300.00 a month for the trust management of the said business." This contradicts the testimony given in court that Hong was supposed to pay On $1,300 each month. The evidence of an injury is already weak, and it is undercut by the plain

language of the Trust Management Agreement, which shows the obligation running from On to Hong rather than the other way around.

Therefore, to the extent any of the $1,300 rent payments were outstanding, On failed to prove by a preponderance of the evidence that this debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

The third set of facts compels a different result. The evidence showed that On purchased new dry cleaning equipment for Dove East Cleaners in 2001, and that this equipment was still at the premises on May 6, 2011. Additionally, the business had a known phone number as well as many retail walk-in customers and approximately 15 drop-off clients on that date.

Hong, in collaboration with Fujisawa, took over the dry cleaning operation at 1132 West Thorndale on May 6, 2011, and essentially evicted On. In the course of doing so, Hong inflicted an injury on On by depriving him of the dry cleaning equipment and the customers. Hong did so knowing he had no legal justification and either desiring to inflict the injury on On or knowing it was highly likely to result from his act.

Hong's testimony that he believed Fujisawa to be the owner was not credible. He hemmed and hawed, hesitating and dropping his head into his hands as if in confusion. Hong only provided the names of those parties who "confirmed" that Fujisawa was the owner after a direct order from the court. Moreover, neither of those parties appeared to testify. Additionally, Hong continued to pay On according to the Trust Management Agreement even after it expired, when he allegedly believed Fujisawa owned the business. Hong's actions belie his explanations at trial.

Furthermore, Hong told On that he was working on a purchase agreement for Dove East Cleaners. When he couldn't come up with the money – or chose not to try – Hong found another

route to ownership of the business. The evidence showed that Hong and Fujisawa negotiated a lease for the premises without On's knowledge, and that both Hong and Fujisawa knew this would essentially evict On from his dry cleaning business. Although Fujisawa testified that On was not a good tenant and caused serious damage to the property, his testimony is less than credible in light of the fact that he never filed a forcible detainer action against On. Taking all the testimony together, the most logical conclusion is that Fujisawa saw an opportunity to obtain a more pliable tenant, and worked with Hong to oust On from the premises.

In order to establish that conversion occurred, the tortious conduct that renders the injury resulting from Hong's breach of contract nondischargeable, On must establish that: (1) he has a right to the property; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he made a demand for possession; and (4) Hong wrongfully and without authorization assumed control, dominion, or ownership over the property.

The evidence showed that On owned Dove East Cleaners, including the dry cleaning equipment and the customers. Although the Trust Management Agreement gave Hong the right to manage the business, it said nothing about transferring ownership of the equipment or giving Hong the right to take the customers. On retained the absolute and unconditional right to possession of the equipment and the customers. Moreover, the agreement had expired more than nine months earlier and was never renewed.

On April 30, 2011, Hong told On that he could not come up with the funds to purchase the business. On demanded that the business be returned to him. He gave Hong a week's grace period, not the right to abscond with the equipment and customers. Instead, on May 6, 2011, Hong wrongfully and without authorization assumed control over the business, which included the equipment and the customers.

[11]

Hong's testimony that he believed Fujisawa owned the business was not credible. Among other problems, it is inconsistent with his actions – going to On's house and negotiating a purchase price. Furthermore, Hong's performance on the witness stand was marked by hesitation and backtracking that cannot be explained by the language barrier, since both he and On used the same excellent interpreter. Indeed, at one point the interpreter complained that Hong was answering in English.[4] Hong understood the questions posed to him and chose to provide those answers that suited him. Twice the court was required to give Hong an instruction to be responsive in answering opposing counsel's question.

The court finds that Hong converted the dry cleaning equipment owned by On, as well as the drop off customers who used Dove East Cleaners and the goodwill that brought in the retail customers. In doing so, Hong caused an injury to On measured by the value of the equipment and the customers.

Finally, Hong caused that injury knowing he had no legal justification. On had given him a week to leave the business after he failed to raise the money required to purchase it. Hong knew that by signing a lease with Fujisawa and ousting On from his own business, this injury was highly likely to result. Therefore, the debt resulting from Hong's conversion of the equipment and the customers is nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

---

[4] This complaint would have been well taken more than once.

## CONCLUSION

For all of the reasons stated above, the court finds that: (1) the debt represented by any unpaid accounts receivable is discharged; (2) the debt represented by any unpaid $1,300 monthly rent payments is discharged; and (3) the debt resulting from Hong's conversion of the equipment and the customers of Dove East Cleaners is nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

Date: 17 JUL 2013

PAMELA S. HOLLIS
United States Bankruptcy Judge